















R1R   5/23/06   8:45
3:05-CV-00923   MAVROGIORGOS V. RITE AID CORPORATION
*54*
*P/A.*

1　MARK YABLONOVICH (Cal. State Bar No. 186670)
　　MARC PRIMO (Cal. State Bar No. 216796)
2　SHAWN WESTRICK (Cal. State Bar No. 235313)
　　INITIATIVE LEGAL GROUP LLP
3　1875 Century Park East, Suite 1800
　　Los Angeles, California 90067
4　Telephone: (310) 556-5637
　　Facsimile: (310) 861-9051
5
　　Attorneys for Plaintiff Demetrios Mavrogiorgos
6

7　JEFFREY D. WOHL (Cal. State Bar No. 96838)
　　JULIE A. WILKINSON (Cal. State Bar No. 209180)
8　PAUL, HASTINGS, JANOFSKY & WALKER LLP
　　55 Second Street, 24th Floor
9　San Francisco, California 94105-3441
　　Telephone: (415) 856-7000
10　Facsimile: (415) 856-7100

11　(Additional counsel for defendants on next page)

12　Attorneys for Defendants
　　Rite Aid Corporation and
13　Rite Aid Hdqtrs. Corp.

14

15　　　　　　　　UNITED STATES DISTRICT COURT

16　　　　　　SOUTHERN DISTRICT OF CALIFORNIA

17

18　DEMETRIOS MAVROGIORGOS,　　　　No. C-05-0923-H (CAB)
　　individually, and on behalf of the general
19　public similarly situated,　　　　　**MEMORANDUM IN SUPPORT OF JOINT**
　　　　　　　　　　　　　　　　　　**MOTION FOR CERTIFICATION OF**
20　　　　　Plaintiff,　　　　　　　　**SETTLEMENT CLASS AND**
　　　　　　　　　　　　　　　　　　**PRELIMINARY APPROVAL OF**
21　　　　vs.　　　　　　　　　　　　**SETTLEMENT**

22　RITE AID CORPORATION, a Delaware　Date:　　June 19, 2006
　　corporation; RITE AID HDQTRS. CORP.,　Time:　　10:30 a.m.
23　a Delaware corporations, and DOES 1　Courtroom: 13, 5th Floor
　　through 10, inclusive,　　　　　　Judge:　　Hon. Marilyn L. Huff
24　　　　　Defendants.
　　　　　　　　　　　　　　　　　　**FILE BY FAX**
25

26

27

28

FILED
06 MAY 22 PH 4: 07
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1   (Additional counsel for defendants)

2   MARY C. DOLLARHIDE (Cal. State Bar No. 138441)
    LEAH C. LIVELY (Cal. State Bar No. 197636)
3   PAUL, HASTINGS, JANOFSKY & WALKER LLP
    3579 Valley Centre Drive
4   San Diego, California 92130
    Telephone: (858) 720-2500
5   Facsimile: (858) 720 2555

6   Attorneys for Defendants
    Rite Aid Corporation and
7   Rite Aid Hdqtrs. Corp.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

*Page*

Table of Authorities ..................................................................................................... ii

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND .................................................................................................... 2

III.  SUMMARY OF SETTLEMENT TERMS............................................................. 3

IV.  CLASS ACTION SETTLEMENT APPROVAL PROCEDURE ......................... 4

V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE........... 6

    A.   The Settlement Is Fair and Reasonable........................................................... 7

    B.   Liability Is Contested, and the Settlement Provides for Reasonable Compensation for Class Members Given That Plaintiff Concedes There Were No Actual Damages Suffered by Class Members ............................................................. 8

    C.   The Settlement Amount Is Within the Range of Reasonableness ..................... 8

    D.   Plaintiff Contends, and Rite Aid Does Not Contest, That The Proposed Payment to Plaintiff of Up to the $10,000 for His Services to the Class as Class Representative Is Reasonable and of the Kind Routinely Awarded ...................... 8

    E.   Plaintiff Contends, and Rite Aid Does Not Contest, That The Proposed Payment to Class Counsel for Attorneys' Fees and Expenses Are Reasonable ................. 9

VI.  CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE............. 11

    A.   The Proposed Class Is Sufficiently Numerous ................................................. 11

    B.   The Commonality Requirement Is Met ........................................................... 12

    C.   The Typicality Requirement Is Met................................................................. 12

    D.   The Adequacy Requirement Is Met ................................................................. 12

    E.   Common Issues Predominate and a Class-wide Settlement Is Superior to Other Available Methods of Resolution .................................................................... 13

VII. THE PROPOSED CLASS NOTICE IS APPROPRIATE........................................ 13

    A.   The Class Notice Satisfies Due Process........................................................... 13

    B.   The Proposed Class Notice Is Accurate and Informative ................................. 14

VIII. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED............................. 15

IX.  CONCLUSION....................................................................................................... 15

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Amchem Products v. Windsor,*
   521 U.S. 591 (1997)................................................................13

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1982) ........................................4, 6

*Eisen v. Carlisle & Jacqueline,*
   417 U.S. 156 (1974)................................................................14

*Gay v. Waiters' & Dairy Lunchmen's Union,*
   489 F. Supp. 282 (N.D. Cal. 1980), aff'd 694 F.2d 531 (9th Cir. 1982).....................11

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ........................4, 6, 7, 10, 11, 12, 13, 14

*Henry v. Sears, Roebuck & Co.,*
   1999 U.S. Dist. LEXIS 13831 (N.D. Ill. 1999) ........................10

*Ingram v. The Coca-Cola Co.,*
   200 F.R.D. 685 (N.D. Ga. 2001)........................................9

*Jordan v. County of Los Angeles,*
   669 F.2d 1311 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982)................11

*Mashburn v. National Healthcare, Inc.,*
   684 F. Supp. 679 (M.D.Ala.1988) ........................................11

*Murillo v. Texas A & M University System,*
   921 F. Supp. 443 (S.D. Tex. 1996)........................................7

*Paul, Johnson, Alston & Hunt v. Graulty,*
   886 F.2d 268 (9th Cir. 1989) ........................................10, 11

*Shaw v. Toshiba America Information Systems, Inc.,*
   91 F. Supp. 2d 941 (E.D. Tex. 2000)........................................10

*In Re Southern Ohio Correctional Facility,*
   175 F.R.D. 270 (S.D. Ohio 1997)........................................9

*In re Traffic Exec. Association,*
   627 F.2d 631 (2d Cir. 1980)........................................6

*Van Bronkhorst v. Safeco Corp.,*
   529 F.2d 943 (9th Cir. 1976) ........................................6

*Van Vranken v. Atlantic Richfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995)........................................9

*Wehner v. Syntex Corp.,*
   117 F.R.D. 641 (N.D. Cal. 1987)........................................12

*Wolf v. Toyota Motor Sales USA, Inc.,*
   1997 U.S. Dist. LEXIS 16457 (N.D. Cal. 1997) ........................10

# TABLE OF AUTHORITIES
### *(cont'd)*

*Page*

**Statutes**

Cal. Lab. Code
§ 226(a).................................................................................................................2
§ 226(a)(9)...........................................................................1, 2, 3, 4, 10, 12
§ 226(e).................................................................................................................4

Fed. R. Civ. P.
R. 23(a)..........................................................................................................11, 14
R. 23(e).................................................................................................................4

**Secondary Authorities**

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995)
§§ 30.211, 30.212..........................................................................................14
§ 30.41 .........................................................................................................5, 7, 9

4 Herbert B. Newberg, *Newberg on Class Actions*
§ 3.5.......................................................................................................................11
§ 11.22 *et seq* ..................................................................................................4
§ 11.25.....................................................................................................5, 6, 7, 14

## I.     INTRODUCTION

Plaintiff Demetrios Mavrogiorgos and defendants Rite Aid Corporation and Rite Aid Hdqtrs. Corp. (collectively "Rite Aid") seek the Court's preliminary approval of their proposed class action settlement.

Plaintiff sued Rite Aid under the Fair Labor Standards Act ("FLSA") and related state law claims. After an extensive exchange of information, plaintiff agreed to drop his FLSA claim and two of his causes of action, and the parties have agreed to settle his remaining Third Cause of Action, which alleges that wage statements issued to hourly employees in the State of California over the past two years failed to comply with California Labor Code section 226(a)(9) (requiring that the applicable hourly rate for all hours worked be shown). Rite Aid denies that it has any liability for the alleged violation for several reasons, including but not limited to preemption of the cause of action under section 301 of the Labor Management Relations Act ("LMRA"); the absence of a violation of section 226(a)(9); the absence of any actual injury to plaintiff or the class he seeks to represent; and the absence of any knowing and intentional violation of the statute.

After a lengthy mediation conducted by a highly-regarded and experienced private mediator, the parties reached a settlement of plaintiff's Third Cause of Action. The proposed settlement provides, *inter alia*, that (1) Rite Aid will comply with section 226(a)(9) with respect to future wage statements; (2) Rite Aid will issue to each class member six discount coupons for the purchase of Rite Aid merchandise, the collective value of which is estimated at $1,750,000 or more; (3) Rite Aid will pay plaintiff $10,000 as a class representative payment, subject to the Court's approval; (4) Rite Aid will pay class counsel $350,000 for their attorneys' fees and costs, subject to the Court's approval; and (5) Rite Aid will pay the reasonable costs of administration of the settlement.[1] The parties now seek court approval of their settlement.

The settlement satisfies all of the criteria for preliminary settlement approval under federal law

---

[1]     A copy of the fully executed settlement agreement, including its exhibits, is attached as Exhibit A to the Declaration of Marc Primo in Support of Joint Motion for Certification of Settlement Class and Preliminary Approval of Settlement ("Primo Decl."). The exhibits to the settlement agreement include the form of notice to the class (Exhibit A), the form of the class members' election not to participate in settlement (Exhibit B), and the proposed form of order granting this motion (Exhibit C), and the proposed form of order granting the motion for final approval of the settlement (Exhibit D).

1   and falls well within the range of possible approval. Accordingly, plaintiff and Rite Aid request that the

2   Court provisionally certify the proposed class for settlement purposes only, grant preliminary approval

3   of the settlement, direct the distribution to the class of notice of the settlement and the opportunity to

4   object to the settlement or elect not to participate in the settlement, and schedule a final approval

5   hearing. (A proposed timeline for the approval process based on the settlement is set forth in the

6   accompanying proposed order on this joint motion.)

7   **II.   BACKGROUND**

8   On February 15, 2005, plaintiff commenced an action against Rite Aid in San Diego Superior

9   Court entitled, *"Demetrios Mavrogiorgos, individually and on behalf of other members of the general*

10  *public similarly situated, Plaintiff v. Rite Aid Corporation, Rite Aid Hdqtrs. Corp. and Does 1 through*

11  *10, Defendants,"* No. GIC84209 (the "Action"). On April 29, 2005, Rite Aid timely removed the action

12  to this Court based on LMRA section 301 preemption. On October 5, 2005, plaintiff filed a First

13  Amended Complaint alleging four causes of action arising out of the same case and controversy for

14  (1) violation of the Fair Labor Standards Act, (2) violation of California Labor Code sections 201 and

15  202, (3) violation of California Labor Code section 226(a), and (4) violation of California Business and

16  Professions Code sections 17200 *et seq.* On March 9, 2006, after Rite Aid provided plaintiff with

17  extensive information, plaintiff stipulated to and the Court ordered dismissal of plaintiff's First, Second,

18  and Fourth causes of action, leaving plaintiff's Third Cause of Action under Labor Code section 226(a)

19  as his sole remaining claim at issue.

20  Plaintiff contends that the wage statements issued to him and the class by Rite Aid did not

21  comply with the requirements of California Labor Code section 226(a)(9) by not including all applicable

22  hourly rates in effect during the pay period. Plaintiff acknowledges that the wage statements did show

23  the employee's regular rate of pay and, for each category of hours worked, the total number of hours

24  worked and the total amount of wages paid, and thus the applicable hourly rate could easily be

25  calculated from the information provided. On behalf of himself and a class of current and former Rite

26  Aid hourly employees that numbers more than 29,500, plaintiff sought the remedies provided by Labor

27  Code section 226(e).

28  Rite Aid vigorously disputes plaintiff's Third Cause of Action and maintains that plaintiff and

LEGAL_US_W # 53608485.1                          2                    MEMO I/S/O MTN FOR APPROVAL OF SETTLEMENT
                                                                      U.S.D.C., S.D. Cal., No. C-05-0923-H (CAB)

FAX 619 280 0070 DIVERSIFIED LEGAL SVC

1  the class he alleges are owed nothing. Rite Aid contends, *inter alia*, that plaintiff's Third Cause of

2  Action is preempted by LMRA section 301; that the wage statements do not violate Labor Code section

3  226(a); that, in any event, plaintiff and the class suffered no injury as a result of any alleged failure to

4  comply with California Labor Code section 226(a)(9); and that any alleged failure to comply was not

5  knowing and intentional, which elements, Rite Aid contends, are required for relief under section 226(e).

6         On March 10, 2006, Rite Aid moved for summary judgment, and plaintiff moved for both class

7  certification and summary judgment. While those motions were pending, on April 19, 2006, the parties

8  submitted the dispute to Mediator Antonio C. Piazza of Gregorio, Haldeman, Piazza, Rotman & Frank, a

9  highly-regarded and vastly-experienced private mediator. Primo Decl., ¶ 3. The mediation (which

10  lasted all day) proved successful, and a settlement was reached that day. *Id.* The settlement was later

11  further memorialized as a formal settlement agreement. *Id.*, Exh. A.

12  **III.   SUMMARY OF SETTLEMENT TERMS**

13         Under the settlement, a class will be certified, solely for purposes of settlement, as follows:

14         Each current and former hourly Rite Aid employee (including each hourly employee of
       Thrifty PayLess, Inc. [a Rite Aid subsidiary]) who is or was employed in the State of
15         California at any time during the period from February 15, 2004, to April 15, 2006.

16         Under the settlement, Rite Aid will (1) revise the form of its wage statements commencing with

17  the statements covering the pay period of April 16, 2006, to April 29, 2006, so that the statements

18  comply with California Labor Code section 226(a)(9); (2) issue to each participating class member six

19  discount coupons, each good for 15 percent off of the regular purchase price of Rite Aid merchandise,

20  the collective value of which is estimated at $1,750,000 or more;[2] (3) pay $10,000 to plaintiff as a class

21  representative payment, subject to the Court's approval; (4) pay $350,000 for class counsel's attorneys'

22  fees and expenses, subject to the Court's approval; and (5) pay the reasonable costs of administering the

23  settlement.

24         As part of the settlement, class members release all known and unknown claims against Rite Aid

25  and all of its related entities and persons for claims arising from or based on an alleged violation of

---

26  [2]    *See* Learish Decl., ¶ 9. The specifics regarding the settlement coupons to be issued to the class

27  are set forth in detail in the parties' settlement agreement (*see* Primo Decl., Exh. A). The coupons are
redeemable at any Rite Aid location and each can be applied to any single transaction. Current

28  employee class members may use the discount in addition to their regular 20 percent employee discount.

1 | California Labor Code section 226, or any other federal, state and/or local law, statute, ordinance,

2 | regulation, common law, or other source of law related to the form of wage statements issued by Rite

3 | Aid, whether or not such claims are in the nature of damages, penalties, waiting-time penalties,

4 | attorneys' fees or injunctive relief, whether sounding in contract or tort, or pursuant to a statutory

5 | remedy, and covenant not to sue on such claims.

6 | IV.  **CLASS ACTION SETTLEMENT APPROVAL PROCEDURE**

7 |      A class action may not be dismissed, compromised or settled without the approval of the court.

8 | Fed. R. Civ. Proc., Rule 23(e).  Judicial proceedings under Rule 23, Federal Rules of Civil Procedure,

9 | have led to a defined procedure and specific criteria for settlement approval in class action settlements,

10 | described in the *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("*Manual*") § 30.41.

11 | The *Manual's* settlement approval procedure describes three distinct steps:

12 |      1.    Preliminary approval of the proposed settlement at an informal hearing;

13 |      2.    Dissemination of mailed and/or published notice of the settlement to all affected
14. |            class members; and

15 |      3.    A "formal fairness hearing," or final settlement approval hearing, at which class
      |            members may be heard regarding the settlement, and at which evidence and
16 |            argument concerning the fairness, adequacy, and reasonableness of the
      |            settlement is presented.

17 |      This procedure, commonly used by the courts, and endorsed by the leading class action

18 | commentator, Professor Newberg, safeguards class members' procedural due process rights and enables

19 | the court to fulfill its role as the guardian of class interests.  *See* 4 Herbert B. Newberg, *Newberg on*

20 | *Class Actions* § 11.22 *et seq.* (4th ed. 2002 and Supp. 2004) ("*Newberg*").

21 |      The decision to approve or reject a proposed settlement is committed to the court's sound

22 | discretion.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("We have repeatedly stated

23 | that the decision to approve or reject a settlement is committed to the sound discretion of the trial

24 | judge[.]").  Accordingly, a court's decision to approve a class action settlement may be reversed only

25 | upon a strong showing of "clear abuse of discretion." *Id.*; *Class Plaintiffs*, v. *City of Seattle*, 955 F.2d

26 | 1268, 1276 (9th Cir. 1982) (in context of class action settlement, appellate court cannot "substitute [its]

27 | notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only

28 | upon strong showing of abuse of discretion).

With this motion, the parties request that the Court take the first step in the settlement approval process, and grant preliminary approval of the settlement. The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. 4 *Newberg* § 11.25.

The parties further request that the Court at this time certify the class for purposes of settlement only. Conditional class certification is appropriate at the preliminary approval stage where, as here, the class as defined in the parties' settlement has not previously been certified by the Court, and the requirements for certification are met. 4 *Newberg* § 11.22. The practical purpose of conditional class certification is to facilitate distribution to the class of notice of the terms of the settlement and the date and time of the final approval hearing. *See Manual* § 30.41. The additional rulings sought on this motion—approving the form, content and distribution of a class notice, and scheduling a formal fairness hearing—facilitate the settlement approval process, and are also typically made at the preliminary approval stage. 4 *Newberg* § 11.26. Neither formal notice nor a hearing is required for the Court to grant preliminary approval or conditional class certification; instead, the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Manual* § 30.41.

The following schedule sets forth a proposed sequence for the relevant dates and deadlines, assuming this Court grants preliminary approval to the settlement on June 19, 2006. This sequence is also outlined in the proposed order filed with this motion.

| Timing | Event |
|---|---|
| June 29, 2006 (10 days after preliminary approval of settlement) | Rite Aid provides to settlement administrator mailing addresses for class members. |
| July 13, 2006 (14 days after Rite Aid provides class member addresses to settlement administrator) | Settlement administrator mails class notice and form of election not to participate in settlement. |
| August 3, 2006 (45 days before final approval hearing) | Deadline for class members to submit written objections to the settlement or elections not to participate in settlement. |

FAX 619 280 0070 DIVERSIFIED LEGAL SVC

| Timing | Event |
|---|---|
| August 14, 2006 (35 days before final approval hearing) | Settlement administrator notifies parties of class members who timely submitted elections not to participate in settlement. |
| August 18, 2006 (30 days before final approval hearing) | If 150 or more class members timely submit elections not to participate, Rite Aid must notify plaintiff and the Court by this date if it is voiding the settlement |
| September 1, 2006 (17 days before final approval hearing) | Parties submit joint motion for final approval; class counsel submit motion for attorneys' fees and expenses. |
| September 13, 2006 (5 days before final approval hearing) | Parties submit supplemental papers in support of joint motion to approve settlement, if any. |
| September 18, 2006 | Final approval hearing. |

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See* 4 *Newberg* § 11.41 (and cases cited); *City of Seattle*, 955 F.2d at 1276; *Van Bronkhorst* v. *Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). These concerns apply with particular force in a case such as this, where the form of wage statements issued to plaintiff and the class and challenged by plaintiff affected more than 29,500 employees.

The purpose of the preliminary evaluation of class action settlements is to determine only whether the proposed settlement is within the range of possible approval, and thus whether notice to the class of the terms and conditions and the scheduling of a formal fairness hearing are worthwhile. 4 *Newberg* § 11.25. In passing on class action settlements, the court has broad powers to determine whether a proposed settlement is fair under the circumstances of the case, and "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026. To grant preliminary approval of this class action settlement, the court need find only that the settlement falls within the range of possible final approval, also described as "the range of reasonableness." *See, e.g., In re Traffic Exec. Ass'n*, 627 F.2d 631, 633-34 (2d Cir. 1980); *see also* 4 *Newberg* § 11.25.

To make this fairness determination, courts must consider several relevant factors, including "the

1   strength of the plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the

2   risk of maintaining class action status through trial; the amount offered in settlement; the extent of

3   discovery completed and the stage of the proceedings; [and] the experience and views of counsel ...."

4   *Hanlon*, 150 F.3d at 1026. Furthermore, courts must give "proper deference to the private consensual

5   decision of the parties," since "the court's intrusion upon what is otherwise a private consensual

6   agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

7   reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

8   between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

9   adequate to all concerned." *Hanlon*, 150 F.3d at 1027.

10      The *Manual* characterizes the preliminary approval stage as an "initial assessment" of the

11  fairness of the proposed settlement made by the court on the basis of written submissions and informal

12  presentation from the settling parties.  The *Manual* summarizes the preliminary approval criteria as

13  follows:

14  > If the preliminary evaluation of the proposed settlement does not disclose grounds to
    > doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of

15  > class representatives or of segments of the class, or excessive compensation for attorneys,
    > and appears to fall within the range of possible approval, the court should direct that

16  > notice ... be given to the class members of a formal fairness hearing, at which arguments

17  > and evidence may be presented in support of and in opposition to the settlement.

18  *Manual*, § 30.41; see also 4 *Newberg*, § 11.25.  Here, as shown below, the settlement falls well within

19  the range of reasonableness.

20      **A.   The Settlement Is Fair and Reasonable.**

21      A preliminary review of the settlement gives rise to no doubts as to its fairness.  Indeed, this

22  Court should begin its analysis with a presumption that the settlement is fair. *Murillo* v. *Texas A & M*

23  *Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996) (there is an "initial presumption of fairness when a

24  proposed class settlement was negotiated at arm's length by counsel for the class.").

25      Here, following substantial analysis and debate over the meaning and applicability of Labor

26  Code sections 226(a) and 226(e) and Rite Aid's many defenses, including preemption under section 301

27  of the LMRA and the absence of a predicate violation of Labor Code section 226(a), the lack of actual

28  injury caused by the alleged non-compliance with the statute, and the absence of a knowing and

1    intentional violation of the statute, the parties negotiated the settlement in good faith and at arms' length

2    in an all-day mediation presided over by Mediator Piazza, a highly-regarded and vastly-experienced

3    mediator. Primo Decl., ¶ 3. This litigation has allowed both sides to assess the strengths and

4    weaknesses of their respective positions in the case, and the benefits of the settlement under the

5    circumstances of this case. Furthermore, plaintiff's counsel are experienced in handling significant

6    employment class actions. Accordingly, the settlement should be presumed to be fair.

7
8
   **B.**    **Liability Is Contested, and the Settlement Provides for Reasonable Compensation for Class Members Given That Plaintiff Concedes There Were No Actual Damages Suffered by Class Members.**

9    Of particular relevance to the reasonableness of the settlement is the fact that Rite Aid has

10    available substantial grounds for defending against this action, including LMRA section 301

11    preemption, the absence of a violation of Labor Code section 226(a), the lack of actual injury caused by

12    the alleged violation of the statute, and the absence of a knowing and intentional violation of the statute,

13    each of which would completely defeat plaintiff's claim. Against this background, the settlement

14    resolves the highly disputed claim by providing each class member with six coupons for 15 percent off

15    of purchases they make from Rite Aid. These coupons have an estimated aggregate value of $1,750,000

16    or more. In addition, Rite Aid will pay to plaintiff up to $10,000 as his class representative payment, to

17    class counsel up to $350,000 for their attorneys' fees and costs, and will pay all reasonable costs of

18    settlement administration. This is a reasonable settlement of a highly disputed matter. Moreover, no

19    one is prejudiced by the settlement; those class members who wish to be excluded from the settlement

20    may complete and return an Election Not to Participate in Settlement form.

21    **C.**    **The Settlement Amount Is Within the Range of Reasonableness.**

22    Especially in a case where plaintiff Rite Aid raised several viable defenses that could have

23    defeated plaintiff's claim, the discount coupons with an estimated aggregate value of $1,750,000 or

24    more provides a significant recovery to the class and clearly falls within the range of reasonableness.

25
26
   **D.**    **Plaintiff Contends, and Rite Aid Does Not Contest, That The Proposed Payment to Plaintiff of Up to the $10,000 for His Services to the Class as Class Representative Is Reasonable and of the Kind Routinely Awarded.**

27    Plaintiff contends, and Rite Aid does not contest, that the proposed payment to plaintiff of

28    $10,000 for his services as class representative is fair and appropriate. The following section is

---

1    submitted by plaintiff:

2         A separate payment to the named class representative is intended to recognize the plaintiff's time

3    and efforts on behalf of the class.  "'Courts routinely approve incentive awards to compensate named

4    plaintiffs for the services they provide and the risks they incurred during the course of the class action

5    litigation.'"  *Ingram* v. *The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In Re*

6    *Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *see also Manual* § 30.42,

7    n.763 (noting that such awards "may sometimes be warranted for time spent meeting with class

8    members or responding to discovery").  In the *Coca-Cola* case, the court approved significant incentive

9    awards to each named plaintiff in recognition of the services they provided to the class by responding to

10   discovery, in the mediation process and taking the risk of stepping forward on behalf of the class.  200

11   F.R.D. at 694; *see also Van Vranken* v. *Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)

12   (approving $50,000 participation award).

13        Here, plaintiff produced relevant documents and spent substantial time with class counsel

14   providing information relevant to the case.  He also assumed the risk of liability to Rite Aid for costs and

15   attorneys' fees in the event that his claim was dismissed.  Furthermore, the proposed payment made to

16   him as class representative—$10,000, subject to the approval of the Court—is modest compared to the

17   estimated aggregate value of the settlement compensation being provided to the class as a whole.

18   **E.    Plaintiff Contends, and Rite Aid Does Not Contest, That The Proposed**
          **Payment to Class Counsel for Attorneys' Fees and Expenses Are Reasonable.**

19

20        Plaintiff contends, and Rite Aid does not contest, that the proposed payment to class counsel of

21   up $350,000 for their attorneys' fees and costs is reasonable.  The following section is submitted by

22   plaintiff:

23        Under the settlement, Rite Aid has agreed to pay $350,000 in attorneys' fees and costs to class

24   counsel for prosecuting this case, subject to the Court's approval.  Courts should give "proper deference

25   to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a

26   private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

27   necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

28   by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable

1   and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (1998).

2          Through diligent litigation and mediation efforts of Class Counsel, class members will receive

3   coupons valued at approximately $1,750,000. *See* Declaration of John Learish filed with this motion.

4   Rite Aid stores carry wide ranging products that the general public, class members included, purchase

5   on a regular basis. *Id.* These coupons represent a benefit of economic value to class members for the

6   cash savings they can receive by redeeming the coupons. They are valuable recovery for a technical

7   violation for which the class members have arguably suffered no actual damages. Courts have approved

8   class settlements in which the class members receive coupons. *See, e.g., Shaw v. Toshiba America*

9   *Information Systems, Inc.*, 91 F. Supp. 2d 941 (E.D. Tex. 2000); *Henry v. Sears, Roebuck & Co.*, 1999

10  U.S. Dist. Lexis 13831 (N.D. Ill. 1999); *Wolf v. Toyota Motor Sales USA, Inc.*, 1997 U.S. Dist. LEXIS

11  16457 (N.D. Cal. 1997).) In addition, the prosecution of this case also has resulted in a non-monetary

12  benefit to class members and thousands of other employees in California. Pursuant to the settlement,

13  commencing with the wage statement covering the pay period of April 16, 2006, to April 29, 2006, Rite

14  Aid has issued wage statements to thousands of its employees in California that are in conformity with

15  California Labor Code section 226(a)(9).

16         The requested fees and costs are fair compensation for undertaking complex, risky, expensive,

17  and time-consuming litigation solely on a contingency basis, which have resulted in substantial benefits

18  to the class members. Courts have long utilized the common fund doctrine in awarding attorneys' fees

19  to counsel pursuing claims on behalf of a class. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d

20  268, 272 (9th Cir. 1989). The "benchmark" award is 25% (twenty five percent) of the recovery

21  obtained. *Id.* Here, the requested attorneys' fees and costs represent only 20% of the $1,750,000 value

22  of the recovery. It should be noted also that unlike in the usual "common fund" settlements, the benefits

23  to the class members are not diminished by any attorneys' fees and costs, which Rite Aid has agreed to

24  pay separately, subject only to the Court's approval of the fee application.

25         Class counsel have borne the entire risk and costs of litigation for over a year, all on a purely

26  contingency basis. Plaintiff's counsel spent considerable time researching the viability of the claim

27  settled. This included in-depth research into the legislative history as well as staying abreast of the

28  recent case law in both state and federal courts. Plaintiff's attorney filed a motion for summary

1 judgment in this matter as well as a motion for class certification. Plaintiff took a substantial risk in

2 forwarding a novel legal theory that resulted in a favorable settlement for the class. In light of the

3 substantial benefits to the class members and the contingent nature of the action, the requested attorneys'

4 fees and costs are reasonable.

5       Under Ninth Circuit precedent, this Court has the discretion to adjust the 25% benchmark

6 upward or downward, but such an adjustment is warranted only in "unusual circumstances." As the

7 Ninth Circuit explained in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989):

8     The sole remaining issue is what percentage of the common fund would provide
[plaintiffs' attorneys] reasonable compensation. The answer to that question, of course,
9     depends on the individual circumstances of this case with which the district court is more
familiar than we are. Ordinarily, however, such fee awards range from 20 percent to 30
10     percent of the fund created. We note with approval that one court has concluded that the
'bench mark' percentage for the fee award should be 25 percent. *See Mashburn v.*
11     *National Healthcare, Inc.*, 684 F. Supp. 679, 692 (M.D.Ala.1988). That percentage
amount can then be adjusted upward or downward to account for any unusual
12     circumstances involved in this case. If such an adjustment is warranted, however, we
caution that it must be made clear by the district court how it arrives at the figure
13     ultimately awarded.

14 **VI.   CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE**

15       Under Rule 23, Federal Rules of Civil Procedure, the requirements for class certification are as

16 follows: numerosity, typicality of the class representatives' claims, adequacy of representation,

17 predominance of common issues, and superiority. Fed. R. Civ. P. 23(a); *see also Hanlon*, 150 F.3d at

18 1019. Thus, for settlement purposes, each of these elements must be present. *See Hanlon*, 150 F.3d at

19 1019, 1022.

20     **A.   The Proposed Class Is Sufficiently Numerous.**

21       The numerosity requirement is met if the class is so large that joinder of all members would be

22 impracticable. *Hanlon*, 150 F.3d at 1019; *Gay* v. *Waiters' & Dairy Lunchmen's Union*, 489 F. Supp.

23 282 (N.D. Cal. 1980), *aff'd* 694 F.2d 531 (9th Cir. 1982). The Ninth Circuit has stated that the

24 numerosity required could be satisfied by a class with 174 members, in part because of the "small size of

25 each class member's claims." *Jordan* v. *County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.), *vacated*

26 *on other grounds*, 459 U.S. 810 (1982); *See* 1 *Newberg* § 3.5. Here, Rite Aid's payroll and personnel

27 records show that the proposed class has at least 29,500 members. Because these numbers are so large,

28 joinder of all class members would be impracticable and a classwide proceeding is preferable.

**B.     The Commonality Requirement Is Met.**

The commonality requirement is met if there are questions of law and fact common to the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class"). Here, the proposed class members' claims all stem from the same source: the allegation that the wage statements issued to the class members were in violation of the requirement of California Labor Code section 226(a)(9). The class members all seek the same legal remedy. Under these specific circumstances, the commonality requirement is satisfied. *Id.* at 1019-20.

**C.     The Typicality Requirement Is Met.**

The typicality requirement is met if the claims of the named representative are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Plaintiff's claims are typical of the claims of the whole class because they arise from the same factual basis and are based on the same legal theory as those applicable to the class members. *See Wehner* v. *Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). Thus, the typicality requirement is also satisfied.

**D.     The Adequacy Requirement Is Met.**

The adequacy requirement is met if the class representative and class counsel have no interests adverse to the interests of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class. *Hanlon*, 150 F.3d at 1020. Those standards are met here. Under the settlement, plaintiff will receive up to a $10,000 payment for his time and effort in assisting class counsel with providing documents and information relevant to the case and for the risks associated with the potential of losing in litigation, but all of the class members will receive the same number of settlement coupons as compensation for their release of claims. Thus, no "settlement allocation" questions are raised. *Hanlon*, 150 F.3d at 1020. Moreover, "potential plaintiffs are not divided into conflicting discrete categories." *Id.* at 1021. Furthermore, there is no "structural conflict of interest based on variations in state law," since (in the absence of LMRA section 301 preemption) only California law would apply to this California-only class. *Id.* There is therefore no conflict of interest between the named representative and the class members.

### E.   Common Issues Predominate and a Class-wide Settlement Is Superior to Other Available Methods of Resolution.

Further, class certification is authorized where common questions of law and fact predominate over individual questions, and where class-wide treatment of a dispute is superior to individual litigation.[3] *Hanlon*, 150 F.3d at 1022-23. The test is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. The proposed class in this case is sufficiently cohesive because all class members share a "common nucleus of facts and potential legal remedies," as was present in *Hanlon*, where the Ninth Circuit approved class certification under the standards set forth in *Amchem. See id.* at 1022. Plaintiff and all proposed class members were rendered the same form of wage statements, and thus there are common questions about whether plaintiff's claim is preempted by LMRA section 301, whether those statements were in compliance with Labor Code section 226(a)(9), whether the lack of actual injury defeats the claim, and whether there was a knowing and intentional violation of the statute, predominate over any individual questions, and the class members' potential legal remedies are identical. Thus, this class may be certified for settlement purposes.

Furthermore, particularly in the settlement context, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *See Hanlon*, 150 F.3d at 1023. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Id.* Here, as in *Hanlon*, the alternative methods of resolution are individual claims for a relatively small amount of damages. *See id.* These claims "would prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery." *Id.* For this reason, in this case, as in *Hanlon*, a class action is the preferred method of resolution.

## VII.   THE PROPOSED CLASS NOTICE IS APPROPRIATE

### A.   The Class Notice Satisfies Due Process.

Rule 23(c)(2), Federal Rules of Civil Procedure, requires the Court to direct to class members the "best notice practicable" under the circumstances, including "individual notice to all members who can

---

[3]   When assessing predominance and superiority, a court may consider that the class will be certified for settlement purposes only, and that manageability of trial is therefore irrelevant. *Amchem Products* v. *Windsor*, 521 U.S. 591 (1997).

1    be identified through reasonable effort." *See Eisen* v. *Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).

2    As the United States Supreme Court has held, notice by mail provides such "individual notice to all

3    members" in accordance with Rule 23(c)(2).  *Id.*  Where the names and addresses of the class members

4    are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'"  *Id.*

5    at 175.

6              The notice plan here entails mailing the class notice to all known and reasonably ascertainable

7    class members based on Rite Aid's payroll records.  The class notice is consistent with class certification

8    notices approved by numerous state and federal courts, and is, under the circumstances of this case, the

9    best notice practicable.  Rite Aid will provide mailing addresses for as many class members as it can

10   locate, and the settlement administrator and class counsel will endeavor to update Rite Aid's database.

11   Such notice also satisfies all due process requirements.  *See Hanlon*, 150 F.3d at 1026 (approving

12   individual notice sent to each putative class member).

13        **B.    The Proposed Class Notice Is Accurate and Informative.**

14             The proposed class notice (*see* Exh. A to Settlement Agreement) provides information on the

15   meaning and nature of the settlement class, the terms and provisions of the settlement, the consideration

16   the settlement will provide class members, the application of class counsel for reimbursement of costs

17   and attorneys' fees, the date, time and place of the final settlement approval hearing, and the procedure

18   and deadlines for electing not to participate in the settlement (*id.*) or for submitting objections.

19             The class notice also fulfills the requirement of neutrality in class notices.  *See 4 Newberg* § 8.39.

20   It summarizes the proceedings to date, and the terms and conditions of the settlement, in an informative

21   and coherent manner, in compliance with the *Manual's* statement that "the notice should be accurate,

22   objective, and understandable to class members ...."  *Manual* at § 30.211.  The class notice clearly states

23   that the settlement does not constitute an admission of liability by Rite Aid, and recognizes that the

24   Court has not ruled on the merits of the action.  It also states that the final settlement approval decision

25   has yet to be made.  Accordingly, the class notice complies with the standards of fairness, completeness,

26   and neutrality required of a settlement class notice disseminated under authority of the Court.  Fed. R.

27   Civ. P. 23(c)(2); 23(e); *4 Newberg* §§ 8.21, 8.39; *Manual* §§ 30.211, 30.212.

28

1   **VIII.  A FINAL APPROVAL HEARING SHOULD BE SCHEDULED**

2         The last step in the settlement approval process is the formal hearing, at which the court may

3   hear all evidence and argument necessary to evaluate the settlement.  At that hearing, proponents of the

4   settlement may explain and describe its terms and conditions and offer argument in support of settlement

5   approval; members of the settlement class, or their counsel, may be heard in support of or in opposition

6   to the settlement agreement.  The parties request that the hearing be held on September 18, 2006.

7   **IX.   CONCLUSION**

8         For all of the foregoing reasons, plaintiff and Rite Aid request that this Court grant preliminary

9   approval to the settlement, approve the proposed form of class notice, set a date for mailing of class

10  notice, set the deadlines for electing not to participate in and objecting to the settlement, and schedule

11  the final settlement approval hearing.

12      Dated:  May 22, 2006.       MARK YABLONOVICH
                                      MARC PRIMO
13                                    SHAWN WESTRICK
                                      INITIATIVE LEGAL GROUP LLP

14

15                                    By:_____

16                                                Marc Primo
                                            Attorneys for Plaintiff
17                                          Demetrios Mavrogiorgos

18      Dated:  May 22, 2006.       JEFFREY D. WOHL
                                      MARY C. DOLLARHIDE
19                                      LEAH C. LIVELY
                                        JULIE A. WILKINSON
20                                      PAUL, HASTINGS, JANOFSKY & WALKER LLP

21                                    By:_____

22                                              Jeffrey D. Wohl
                                          Attorneys for Defendants
23                                          Rite Aid Corporation and
                                          Rite Aid Hdqtrs. Corp.

24

25

26

27

28

1 **VIII. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED**

2     The last step in the settlement approval process is the formal hearing, at which the court may

3 hear all evidence and argument necessary to evaluate the settlement. At that hearing, proponents of the

4 settlement may explain and describe its terms and conditions and offer argument in support of settlement

5 approval; members of the settlement class, or their counsel, may be heard in support of or in opposition

6 to the settlement agreement. The parties request that the hearing be held on September 18, 2006.

7 **IX.   CONCLUSION**

8     For all of the foregoing reasons, plaintiff and Rite Aid request that this Court grant preliminary

9 approval to the settlement, approve the proposed form of class notice, set a date for mailing of class

10 notice, set the deadlines for electing not to participate in and objecting to the settlement, and schedule

11 the final settlement approval hearing.

12     Dated: May 22, 2006.     MARK YABLONOVICH

13                          MARC PRIMO
                            SHAWN WESTRICK

14                          INITIATIVE LEGAL GROUP LLP

15                          By:_____

16                                  Marc Primo
                            Attorneys for Plaintiff

17                            Demetrios Mavrogiorgos

18     Dated: May 22, 2006.     JEFFREY D. WOHL
                            MARY C. DOLLARHIDE

19                          LEAH C. LIVELY
                            JULIE A. WILKINSON

20                          PAUL, HASTINGS, JANOFSKY & WALKER LLP

21                          By:_____

22                                Jeffrey D. Wohl

23                              Attorneys for Defendants
                             Rite Aid Corporation and

24                              Rite Aid Hdqtrs. Corp.

25

26

27

28